IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRYSTAL M. SCHROYER,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   2: 17-cv-380<br>) |
| NANCY BERRYHILL,<br>    Defendant. | )<br>) |

MEMORANDUM and ORDER

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the defendant's motion for summary judgment (ECF No. 20) will be granted; the plaintiff's motion for summary judgment (ECF No. 16) will be denied and the decision of the Commissioner will be affirmed.

On March 28, 2017, Crystal M. Schroyer, by her counsel, filed a complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§405(g) and 1383(c)(3) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits and supplemental security income benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 and 1381 cf.

The plaintiff filed an application for disability and supplemental security income benefits on October 10, 2013 (R.182-192). Benefits were denied on January 9, 2014(R.100-109). On February 13, 2014, the plaintiff requested a hearing (R.114-115), and pursuant to that request a hearing was conducted on August 26, 2015 (R.28-67). In a decision filed on September 10,

2015, an Administrative Law Judge denied benefits (R.7-22). On November 13, 2015, the plaintiff requested reconsideration of this determination (R.6), and upon reconsideration, and in a decision dated January 23, 2017, the Appeals Council affirmed the prior decision (R.1-5). The instant complaint was filed on March 28, 2017.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comr. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999)

Presently before the Court for resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff is not disabled within the meaning of the Act.

At the hearing held on August 26, 2015 (R.28-67), the plaintiff appeared with counsel (R.30), and testified that she was born on May 14, 1978 and was 37years old (R.35); that she graduated from high school and earned an LPN certificate (R.35); that her doctor told her she

2

was disabled and so she stopped working (R.36) and that she last worked in September 2013 (R.36).

The plaintiff also testified that she experiences constant pain from her head to her toes (R.38, 57); that she takes medication for pain and panic attacks (R.40, 41, 44); that she has fibromyalgia (R.45); that she is unable to focus on tasks (R.45-46); that she experiences migraines a few days a week (R.46); that her friends and daughter help her with household chores (R.48) and that she generally is unable to leave her house (R.49).

At the hearing a vocational expert was called upon to testify (R.59-64). The witness characterized the plaintiff's prior work as being of medium exertional level (R.59-60). When asked to assume an individual of the plaintiff's education, training and work experience who was able to perform light exertional level work, he testified that the such an individual could not perform plaintiff's prior work but could engage in a wide range of other work activity including gainful activity if a sit stand option was required (R.60-62). He further testified that if the individual was limited to sedentary work there were still a wide range of available options (R.62). However, the expert added that if the individual was unable to maintain concentration and pace on even simple routines and could not interact with others, or had to miss work two or more times a month the individual could not be employed (R.63-64).

The issue before the Court is whether or not the decision of the Commissioner is supported by substantial evidence.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

It is provided in 42 U.S.C. Section 1382c(a)(3) that:

> (A)... an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.
>
> (B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * *

(D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

It is also provided that:

Notwithstanding the provisions of subparagraphs (A) through (E), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

42 U.S.C. Section 1382c(3)(F).

Pursuant to the authorization contained in 42 U.S.C. Section 1382c(3)(D), the Commissioner has promulgated certain regulations for the implementation of the Supplemental Security Income Program. While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff is not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Commissioner.

The plaintiff was treated at Kreinbrook Psychological Services between January 4, 2012 and June 22, 2012 where sleep apnea and fibromyalgia were diagnosed. MDD and post-traumatic stress disorder were also noted (R.288-302).

The plaintiff was treated at the Associates in Neurology on August 9, 2012 for a sensory disorder. Medication was prescribed. Her neurologic examination was "not remarkable" (R.303-316).

Radiology reports for March 26, 2013 revealed C5-6 disc protrusion (R.322-331).

The plaintiff was treated as an outpatient at Westmoreland Hospital between December 17, 2011 and March 26, 2013 for cervical disc radiculopathy and myelopathy (R. 317-321).

The plaintiff was treated by Dr. A. Timothy Saloom between April 3, 2012 and May 3, 2013 for headaches, malaise, fatigue and abdominal pain. The plaintiff denied depression, anxiety and nervousness (R.332-396).

The plaintiff received treatment at Westmoreland Neurological Associates between June 28, 2012 and June 5, 2013 for mild right ulnar compressive neuropathy, chronic C-6 radicular syndrome and migraines (R.397-403).

The plaintiff was treated by Dr. Jain Bharat between April 10, 2013 and June 18, 2013 for sleep problems. Mild obstructive sleep apnea, shallow fragmented sleep patterns and mild nocturnal hypoxemia were diagnosed (R.404-421).

The plaintiff was treated at the UPMC Headache Center on June 19, 2013 (R.422-426).

MRI and CT scans performed at the Frick Hospital on June 1, 2012 and June 19, 2013 revealed no intercranial abnormality or sinusitis (R.427-429).

The plaintiff was treated at the Frick Hospital Emergency Department between December 19, 2012 and June 23, 2013 for a neck wound, an umbilical hernia repair and follow-up and headaches (R.430-516).

The plaintiff was treated by Dr. Josif Stakic on September 12, 2013 for a chronic headache evaluation. Medication was prescribed and a headache protocol was provided (R.517-532).

The plaintiff was treated by Dr. Lee Harmatz between July 22, 2013 and September 23, 2013 for migraine headaches, insomnia and fibromyalgia (R.533-537).

The plaintiff was treated by Dr. Michael K. Sauter between January 24, 2012 and September 25, 2013 for migraines, fibromyalgia, right ulnar neuropathy, PTSD and sleep apnea. Medication was prescribed (R.538-55).

The plaintiff was treated by Jon E. Rumbaugh, D.C. between April 16, 2012 and October 24, 2013 for right hip bursitis (R.558-570).

The plaintiff was treated at Excela Health between February 12, 2013 and October 25, 2013 for migraine headaches and insomnia. Medication was prescribed (R.571-576).

The plaintiff was examined on January 8, 2014 by Dr. Marjorie Tavoularis who diagnosed post-traumatic stress disorder and cognitive dysfunction. The prognosis was guarded. Other than a moderate inability to understand and execute complex instructions, the plaintiff's limitations were mild (R.596-604).

In a report dated January 9, 2014 the reviewing disability physician noted migraines, fibromyalgia and an anxiety disorder not satisfying the disability criteria. He concluded that the plaintiff was capable of performing simple, routine and repetitive work (R.68-82; 84-98).

The plaintiff was treated at Excela Health between September 23, 2014 and May 13, 2015 for anxiety, fibromyalgia and a bipolar disorder. Medication was prescribed (R.626-649).

The plaintiff was treated at Kreinbrook Psychological Services between October 28, 2013 and August 12, 2015 for post-traumatic stress and a bipolar disorder (R.577-588; 605-625).

The relevant regulations require explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. These regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not,

then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he/she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he/she can do his/her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he/she can exert in engaging in work activity), and if his/her impairment enables him/her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

The claimant has the following severe impairments: fibromyalgia, migraines, headaches, sensory skin disturbance, right ulnar neuropathy, obstructive sleep apnea, degenerative disc disease, major depressive disorder, posttraumatic stress disorder, bipolar disorder, personality disorder NOS and cognitive dysfunction NOS …

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments…

An MRI of her cervical spine showed a C5-6 disc protrusion mildly deforming the ventral aspects of the spinal cord near the origin of the right C6 nerve root without abnormal signal.

The claimant's sleep apnea does not meet or medically equal… [the listing] as there is no evidence of cor pulmonale and …she does not have an organic mental condition that meets or medically equals [the listing] …

The claimant's right ulnar neuropathy does not meet or medically equal [the listing] … as it is limited to her right upper extremity and she retains the ability to perform fine and gross movements effectively…

I have considered the claimant's migraines, headaches and sensory skin disturbance. The evidence … supports a finding that the claimant's migraines, headaches and sensory skin disturbance do not meet or medically equal a listing…

In activities of daily living the claimant has mild restriction[s]…

In social functioning, the claimant has moderate difficulties…

With regard to concentration, persistence or pace, the claimant has moderate difficulties…

As for episodes of decompensation, the claimant has experience no episodes of decompensation…

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" [listing] criteria are not satisfied…

Claimant does not have a medically documented history of a chronic organic or affective disorder of at least two years' duration with episodes of decompensation or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate …

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…

The claimant suffers from fibromyalgia, migraine headaches, sensory skin disturbance, right ulnar neuropathy, obstructive sleep apnea and degenerative disc disease… her neurologist did not believe that her symptoms were caused by a neurological problem and her primary care provider noted that she did not have any history of focal neurologic symptomatology. The generally normal physical examination findings along with her conservative treatment and lack of specialist treatment for her fibromyalgia, shows that she is less limited than allege.

The claimant suffers from major depressive disorder, posttraumatic stress disorder, bipolar disorder, personality disorder NOS and cognitive dysfunction NOS…The

claimant's generally normal mental status examination findings as well as her reported improvement show that she is less limited than alleged.

The claimant's allegations are out of proportion to and inconsistent with the evidence of record… The records also show that she was not forthcoming with her mental health providers about all of the medications she takes… The claimant's failure to provide all of the information about her condition to her mental health providers undermines the credibility of her alleged symptoms and limitations.

Furthermore, the claimant's testimony was extreme as she reported constant pain at the 8 or 9 out of 10 level, but the records show that she did not report that level of subjective pain to her primary care provider.

The records also show frequent no shows to mental health appointments, as well as the claimant's admission that she does not take her medications when she drinks alcohol…

I do not find claimant's explanation for such non-compliance credible…

As for the opinion evidence, on May 13, 2015, Dr. Lee Harmatz opined that the claimant was disabled for psychological reasons and in January of 2015, opined that she was temporarily disabled for the next 6 months. I give his opinion no weight as his statement is cryptic, he did not define the standard and even his records do not support a finding of disability as his mental status examination findings are normal…

Dr. Marjorie Tavoularis opined that the claimant had moderate limitations in her ability to understand, remember and carry out complex instructions… however, I added additional restrictions in her ability to interact with coworkers and supervisors based on her anxiety symptoms and her history of abuse…

The State Agency medical consultant … opined that the claimant was limited to light work. I give his opinion significant weight, as it is generally consistent with the normal physical examination findings of record. However, based upon the findings of the EMG, cervical MRI and evoked potential studies, I further limited the claimant's ability to sit and stand, perform postural maneuvers and be exposed to heights and machinery…

The State Agency [psychological] consultant … opined that the claimant had moderate limitations in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms… I give his opinion significant weight… However, I added additional restrictions in her ability to interact with coworkers and supervisors base on her anxiety symptoms and her history of abuse…

Considering the medical evidence … the claimant's activities and the medically opinions, I find that her subjective complaints and alleged limitations are not fully persuasive and that she retains the capacity to perform work activities within the limitations set forth…

10

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform …

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate…(R.13-22).

The record demonstrates that while the plaintiff has alleged many ailments to support her disability claim, there is little if any evidence substantiating her claim of the severity of these ailments. Rather the record appears to support the conclusion of the Commissioner that these ailments individually or in combination do not support a finding of disability. The Commissioner is charged with determining issues of credibility, Diaz v. Commissioner, 577 F.3d 500, 506 (3d Cir. 2009). Since the Administrative Law Judge clearly identified the bases for reaching his credibility determinations, they are supported by substantial evidence.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. McMunn v. Babcock, 869 F.3d 246 (3d Cir. 2017). In the instant case, there are no material factual issues in dispute, the decision of the Commissioner is supported by substantial evidence, and judgment should be entered for the defendant and against the plaintiff. For this reason, the defendant's motion for summary judgment will be granted; the plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

An appropriate Order will be entered.

Filed: January 4, 2018                        s/ Robert C. Mitchell
                                                                       United States Magistrate Judge

ORDER

AND NOW, this 4th day of January, 2018, for the reasons set forth in the foregoing Memorandum, the plaintiff's Motion for Summary Judgment (ECF No. 16) is denied; the defendant's Motion for Summary Judgment (ECF No.20) is granted, and the decision of the Commissioner is affirmed.

s/ Robert C. Mitchell  
United States Magistrate Judge